# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

STABIL LLC,
RUBENOR LLC,
RUSTEL LLC,
NOVEL-ESTATE LLC,
PII KIROVOGRAD-NAFTA LLC,
CRIMEA-PETROL LLC,
PIRSAN LLC,
TRADE-TRUST LLC,
ELEFTERIA LLC,
VKF SATEK LLC,
STEMV GROUP LLC,

Case No. _____

                    *Petitioners*,

        v.

THE RUSSIAN FEDERATION,

                    *Respondent*.

## DECLARATION OF JAMES H. BOYKIN

JAMES H. BOYKIN declares:

1.      I am a member of the bar of this Court and of the law firm of Hughes Hubbard & Reed LLP, counsel for petitioners Stabil LLC, Rubenor LLC, Rustel LLC, Novel-Estate LLC, PII Kirovograd-Nafta LLC, Crimea-Petrol LLC, Pirsan LLC, Trade-Trust LLC, Elefteria LLC, VKF Satek LLC and Stemv Group LLC (collectively, "Petitioners") in the arbitration proceedings captioned *Stabil LLC et al. v. The Russian Federation*, PCA Case No. 2015-35 (the "Arbitration"). I was counsel for Petitioners at all stages of the Arbitration, including both the jurisdictional and merits phases. I respectfully submit this declaration in support of Petitioners' Petition to Confirm Arbitration Award.

**Attachments to this Declaration**

2.       Attached hereto as Exhibit A is a true and correct copy of the Award on the Merits in the Arbitration, made in Switzerland and issued by the Permanent Court of Arbitration at The Hague on April 12, 2019.

3.       Attached hereto as Exhibit B is a true and correct copy of the Agreement between the Cabinet of Ministers of Ukraine and the Government of the Russian Federation on the Encouragement and Mutual Protection of Investments of November 27, 1998 (the "Treaty"), containing the Respondent's standing offer to arbitrate.  Exhibit B consists of the Treaty in its original Ukrainian (one of its authentic languages) together with a certified translation into English.

4.       Attached hereto as Exhibit C is a true and correct copy of the Notice of Arbitration served on the Russian Federation by the Petitioners on June 3, 2015, in which the Petitioners accepted the Russian Federation's offer to arbitrate.

5.       Attached hereto as Exhibit D is a true and correct copy of the Award on Jurisdiction in the Arbitration, made in Switzerland and issued by the Permanent Court of Arbitration at The Hague on June 26, 2017.

6.       Attached hereto as Exhibit E is a true and correct copy of the decision of the Swiss Federal Supreme Court, which was issued on November 15, 2018, and which provides the Court's reasoning for the decision made at a public hearing held on October 16, 2018, upholding the Tribunal's Award on Jurisdiction.

7.       Attached hereto as Exhibit F is a true and correct copy of the decision of the Swiss Federal Supreme Court, dated December 12, 2019, upholding the Tribunal's Award on the merits.

8.      Attached hereto as Exhibit G is a true and correct copy of the letters dated October 15, 2014 and October 31, 2014, providing notice to the Russian Federation of the Existence of a Dispute under Article 9 of the Treaty.

9.      Attached hereto as Exhibit H are two articles from the Global Arbitration Review discussing Professor Gabrielle Kaufmann-Kohler, the curriculum vitae of Professor Brigitte Stern, and a profile of Mr. Daniel Price from the Transnational Dispute Management Journal.

**Swiss Court Procedures for Addressing International Arbitration Awards**

10.      In my professional experience, I have become familiar with the provisions of Swiss law that apply to petitions to the Swiss Federal Supreme Court (the "FSC") to set aside or annul an arbitration award, specifically Chapter Twelve of the Swiss Private International Law Act (the "PILA") and Articles 58 and 77 of the Swiss Federal Supreme Court Act.  I gained this knowledge from my experience assisting Swiss counsel with the defense of two international arbitration awards against two annulment actions brought by the Russian Federation before the FSC.

11.      From my experience, I learned that Swiss law, specifically Article 77 of the Swiss Federal Supreme Court Act, sets a deadline of thirty days for making an application to the FSC to set aside or annul an arbitration award.  (As of January 1, 2021, that thirty-day limitations period was copied from Article 77 of the Swiss Federal Supreme Court Act to Article 190(4) of the PILA.)  Typically, a party may upon request obtain one extension of that deadline.

12.      Through my experience in Switzerland, I also learned that, while most cases before the FSC are decided based only on written submissions, Article 58(1) of the Swiss Federal Supreme Court Act provides for something the Swiss call "public oral deliberations," among the judges of the FSC if the presiding judge orders it, if the judges are not unanimous, or if one of the five-judge divisions requests it.  The FSC held public oral deliberations on the Russian Federation's application

3

to set aside the Award on October 16, 2018.  It was only the second occasion since 1989 on which the court held public oral deliberations in connection with an application to annul an international arbitration award.

13.     Public oral deliberations pursuant to Article 58(1) of the Swiss Federal Supreme are a unique feature of Swiss law for which there is no ready analogy in United States procedure.  I was involved in the defense of the Award against the Russian Federation before the Swiss Federal Supreme Court.  I attended the public oral deliberations and am familiar with the process.  Because there is no ready analogy in United States practice to the FSC's public oral deliberations, I thought it might be helpful to describe public oral deliberations before the Swiss Federal Supreme Court.

14.     In a case in which the FSC decides to hold public oral deliberations, the five judges of the Court division to which the case was assigned (in Petitioner's case, the Court's First Civil Division) will deliberate in open court, but they will not hear argument from the parties.  The parties and their lawyers may attend, but they are not given any opportunity to speak or otherwise address the FSC.  Custom requires that the lawyers for the parties in attendance dress all in black.  No transcript of such oral deliberations is made.  Each judge then casts a vote and cannot abstain.  The FSC reaches its decision by a majority vote and will inform the parties immediately thereafter of the operative part of its collective decision.

15.     After the public oral deliberations and the announcement of its decisions, the FSC issues one reasoned written decision, which is the decision of the entire Court and does not include any of the divergent views that some of the judges might have expressed during the public deliberation.  In fact, in the written reasoned decision, any judge who did not vote with the majority may not criticize the decision of the majority.  Dissenting opinions do not exist in Swiss judicial practice.  To the extent that one of the five judges may have expressed disagreement with her

colleagues during the oral public deliberations, such statements will not be recorded or otherwise reflected in the FSC's final decision.  Private notes summarizing views expressed by judges during public deliberations have no judicial value and cannot be relied upon as legal authorities.

       I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

       Executed on April 9, 2022 in Washington, D.C., United States of America.

/s/James H. Boykin
JAMES H. BOYKIN